**Andrew J. Shamis, Esq.,** Florida Bar No. 101754
ashamis@shamisgentile.com
**Mariam Grigorian, Esq.,** Florida Bar No. 101050
mgrigorian@shamisgentile.com
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299

**Scott Edelsberg, Esq.**, Florida Bar No. 0100537
scott@edelsberglaw.com
**Christopher Gold, Esq.,** Florida Bar No. 088733
chris@edelsberglaw.com
EDELSBERG LAW, P.A.
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Office: (786) 289-9471
Direct: (305) 975-3320

**Whitney Stark**, OSB No. 090350
whitney@albiesstark.com
ALBIES & STARK
1 SW Columbia St., Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DAVID TAXER** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>**PROGRESSIVE UNIVERSAL INSURANCE COMPANY**, an Ohio corporation,<br><br>*Defendant*. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>Breach of Contract Action (28 U.S.C. § 1332(d), 1441(a)-(b), and 1453)<br><br>DEMAND FOR JURY TRIAL |

PAGE - 1   CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT**

Plaintiff David Taxer ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Progressive Universal Insurance Company ("Progressive" or "Defendant") and alleges as follows:

**INTRODUCTION**

1.     This is a class action on behalf of Plaintiff and all other similarly situated claimants in Oregon who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value ("ACV") of the loss vehicles. Through Mitchell's valuation, Defendant systemically thumbs the scale when calculating the ACV of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) arbitrary; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California and Washington.

2.     In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.     When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under their insurance policy terms

and applicable Oregon law, Defendant has a duty to pay, and represent that it will pay, the ACV of a loss vehicle when adjusting total loss claims.

4.     Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by taking advantage of a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the corresponding claim payment

5.     Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 11.

6.     Neither Progressive nor Mitchell has ever conducted any study or research to determine whether such "consumer purchasing behavior" exists and impacts ACV in the modern used-car market. Worse than this complete lack of curiosity is that Defendant thumbs the scale by discarding vast amounts of relevant data that contradict applying a Projected Sold Adjustment. For example, until July 2021, Defendant, through its vendors, simply threw out all data where the list price equaled or exceeded the sold price. And to this day, it persists in excluding from Projected Sold calculations some data where the list price equaled sold price and all data where the sold price

exceeds the list price, even though examples abound of dealerships that charge more than advertised price to customers purchasing a vehicle with cash—i.e. not providing the dealer the opportunity to profit through financing the sale or acquiring a trade-in—which is particularly relevant to the inquiry of determining a vehicle's ACV. Defendant fails to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at time of purchase, bought an extended warranty or service plan, or financed the purchase).

7.      Nevertheless, Progressive applies a Projected Sold Adjustment to the advertised (or listed) price of comparable vehicles when calculating the ACV of total-loss vehicles. For Plaintiff, the Projected Sold Adjustment was approximately between 3.8% to 4.3% of two of the five comparable vehicle's value prior to adjustments. To arrive at the Projected Sold Adjustment amount, however, Progressive, through third-party vendors, and as set forth above, categorically excludes transactions that undermine its flawed thesis: for example, transactions where the sold price exceeds list price, transactions from dealerships who market themselves as "no-haggle" dealerships, and every transaction where the sold price equaled the advertised price.

8.      As explained herein, the used auto market is such that, given the ubiquity of Internet advertising and shopping and developments in sophisticated pricing software, car dealerships simply do not negotiate off of Internet-advertised prices. Any difference between a list and sales price does not reflect a negotiation of the vehicle's cash value, but rather that a dealer shifted its profits to other components of the transaction: for example, profits made through financing or trade-in or ancillary products described above, or that the dealer applied a generally unavailable discount to the cash value of the vehicle (such as employee discount, loyalty discount, military discount, or friends/family discount). But Progressive ignores these market realities and is content with paying insureds and claimants below-market prices for their totaled vehicles.

9. To arrive at its conclusion that consumers negotiate down the advertised price, Progressive, through its vendors, intentionally distorts the data, excludes transactions that undercut its false hypothesis, and ignores market realities, all for the purpose of applying a capricious and unjustified Projected Sold Adjustment to artificially deflate the value of total loss vehicles.

10. This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through arbitrary, unsupported, and unjustified adjustments, which benefits the insurer at the expense of the insured, violates Defendant's policies with its insureds.

## PARTIES

11. Plaintiff David Taxer, at all relevant times, was an Oregon citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about May 16, 2020, Plaintiff was in a car wreck and Defendant deemed his vehicle to be a total loss.

12. Defendant Progressive Universal Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant is a subsidiary of Progressive Group entities. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage. At all relevant times, Defendant conducted business in Oregon through insurance agents and other company personnel.

## JURISDICTION AND VENUE

13. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Oregon. Defendant is an Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Oregon.

14. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

15. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

**Defendant's Systemic Application of Projected Sold Adjustments**

16. On May 16, 2020, Plaintiff was involved in a car wreck and sustained physical damage to his vehicle. At the time of the car wreck, Plaintiff was contracted with Progressive.

17. Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18. Pursuant to uniform policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to pay him the ACV of his loss vehicle, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Oregon law.

19. When calculating its valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." This process involves obtaining a "Vehicle Valuation Report" from Mitchell and relying upon the valuation provided by Mitchell as the ACV amount owed under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on June 2, 2020. *See* Exhibit B.

20. The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same

format. These valuation reports purport to contain values for comparable vehicles for sale in the claimant's geographic area. The reports also contain a purported valuation of the loss vehicle based upon these prices for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 11.

21. In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$1,279.00 and - $1,264.00, respectively, were applied to two of the five comparable vehicles. Exhibit B at pp. 6-10.

22. Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 11.

23. In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping. Before the ubiquity of online advertising and shopping, "advertised" prices had very little to do with eliciting car buyers to particular dealerships—instead, car buyers generally went to their local used car dealership that had the desired vehicle in stock for sale. The "advertised" price was simply whatever price was listed on the physical window. And consumers could not, as they can now, easily compare that price to Internet advertisements of the same vehicle offered by competitors.

24. As such, dealerships generally priced vehicles above market knowing that some consumers might be poor negotiators and they would realize an inflated profit on those sales. This above-market "window" price obviously allowed for negotiation, and a downward negotiation would often occur.

25. But during the Class Period, that is simply no longer how the used car market operates. Now, given the need for Internet advertising, the prevalence of Internet shopping and consumer behavior, developments in sophisticated pricing software universally used by car dealerships, and the ease with which consumers can compare the advertised prices of identical vehicles across multiple competing dealerships, used car dealerships no longer price vehicles above market with room for—and the expectation of—negotiation. Instead, car dealerships use sophisticated pricing software—which provides the advertised prices of all competitors; the average "turn" of a given year, make and model; the amount for which vehicles have sold during a given time-period; etc.—and now appraise vehicles before acquiring them to price them to market and do not negotiate from that price.

26. This makes sense, because if a car dealership priced a vehicle above market with room for negotiation, consumers would simply not go to that dealership. This is because consumers can easily compare advertised prices and would seek out the vehicle priced to market, rather than the same vehicle priced at a higher amount (i.e., above market). Given the choice between paying less or paying more for an identical vehicle, consumers will choose to pay less.

27. As such, a negotiated discount off the cash price is highly atypical and is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement have

limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

28. Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales against the insured. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, however, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and make adjustments based only on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

29. Defendant thumbs the scale by discarding vast amounts of relevant data that contradict any application of a Projected Sold Adjustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the "sales price" but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

30. Until July 2021, Defendant excluded from the calculation of the Projected Sold Adjustment all transactions in which the list price of a vehicle equaled the sold price.

31. Even after July 2021, Defendant still excludes some transactions in which the list price of a vehicle equals the sold price.

32. Defendant has excluded and continues to exclude from the calculation of the Projected Sold Adjustment all transactions in which the sold price of a vehicle is greater than the list price.

33. Without having performed any investigation or study, Defendant simply assumes all such transactions are anomalies.

34. Likewise, Defendant has not exercised even a modicum of curiosity to investigate whether market realities support the application of a Projected Sold Adjustment. Nor does Defendant or its vendors attempt to verify—even a single time—for those transactions where the advertised price exceeded sold price, whether the reason for the reduction was negotiation of the cash price of the vehicle and not some other (far more likely) reason, some of which are discussed herein.

35. Neither Progressive's form Policy nor Oregon law permit reducing a vehicle's value for invented or arbitrarily assumed justifications.

36. Moreover, the accuracy of Defendant's data is, at best, suspect, as it contains a significant number of transactions where the advertised date in the database comes after the sold date. As a matter of simply chronology, it makes no sense to advertise a vehicle after it is sold. But here, too, Defendant makes no effort to control for this obvious flaw in the data.

37. These irremediable, and unjustifiable, errors, of course, skew the data in favor of Defendant to the detriment of the insureds.

38. Moreover, examples abound demonstrating the glaring error of Defendant's cherry-picking practices.

39. For example, related to the exclusion of sales prices greater than list prices, all advertised prices for comparable vehicles listed in Defendant's valuation reports are scraped from Internet sources—specifically Cars.com, Autotrader.com, Vast.com, and TrueCar.com.

40. The advertised prices many dealerships publish on these websites include discounts for consumers who are financing and providing a trade-in. Thus, a consumer who was not financing the vehicle through the dealership or who was not trading in a vehicle—obviously, insureds who sustained a total loss almost certainly are not trading a vehicle when purchasing a replacement vehicle—would have to pay in cash more than the price listed on sources where Mitchell scrapes advertisements for comparable vehicles. In determining the ACV of Plaintiff's and class members' totaled vehicles, there is no justification for Defendant to have excluded those transactions from calculating the Projected Sold Adjustment, while only including transactions where the sold price was recorded as less than the list price.

41. Simply put, there is no justification for Progressive to exclude such transactions as outliers or mistakes when justifying how it calculates the amount of the so-called Projected Sold Adjustment.

42. Doing so serves only to skew the data to meet Defendant's unjustified, unsupported, and uninvestigated assumption that the list price of comparable vehicles should always be reduced to pay insureds less.

43. Defendant further fails to control whether the vehicle was purchased with discounts unavailable to the public (e.g., employee discounts).

44. Defendant also fails to control for whether the vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the recorded "sales price" but not the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase).

45. In these instances, the ACV of the vehicle remains its price to market; the dealership simply transferred the anticipated profit through either the sale of an optional ancillary product or by reducing what it would have offered in trade-in value.

46. The impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions, Inc.—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

47. On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive does not apply these adjustments when determining the ACV of total losses in California or Washington. There is no justification for applying these adjustments when valuing total losses in Oregon while not subjecting California and Washington insureds to the same negative adjustments.

48. Plaintiff and each member of the proposed Class was damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendant applied proper methodologies and appraisal standards.

49. Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for ACV. Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $508.60 higher, before adding the related increase in payments for applicable sales taxes.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Oregon citizens insured by Progressive who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell

and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

51. Plaintiff is the proposed class representative for the Class. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

52. Plaintiff reserves his right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

53. **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

54. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

   b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the ACV of Plaintiff's and Class members' total loss vehicles;

    c. Whether Defendant's improper practices injured Plaintiff and members of the Class;

    d. Whether Defendant's acts violated its obligations under the policy of insurance;

    e. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

    f. Whether Plaintiff and Class members are entitled to an injunction restraining Progressive's future acts and practices.

55. **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

56. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

57. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be

impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## BREACH OF CONTRACT

58. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

59. This claim is brought by Plaintiff on behalf of the Class.

60. Plaintiff made a claim for property damage on his Progressive insurance policy.

61. At the time of his claim, and in the time since, Plaintiff has performed all obligations under his policy of insurance and was entitled to the benefits he contracted for in his policy.

62. Through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports, as detailed above, Defendant handled, adjusted, and paid Plaintiff's claim, and the claims of the members of the proposed Class, for less than the ACV required by the insurance contract.

63. As a direct result of Defendant's breaches, Plaintiff and members of the Class sustained actual damages. Plaintiff's damages are at least $508.60 (before calculation of additional sales tax benefits), plus pre-judgment and post-judgment interest.

## COUNT 2
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

64. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

65. This claim is brought by Plaintiff on behalf of the Class.

66. Every contract, including the Policy, contains an implied covenant of good faith

and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

67. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

68. To the extent the Policy provides Defendant with in calculating the ACV of an insured's total-loss vehicle, Defendant exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

69. Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a. Intentionally inventing and applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b. Failing to conduct *any* investigation or study or research into whether the Projected Sold Adjustment (i) reflects the used auto market, (ii) is based on accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever;

   c. Failing to pay insureds the ACV of their total-loss vehicles;

   d. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

  e. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

70. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

## COUNT 3
## DECLARATORY JUDGMENT

71. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

72. This claim is brought by Plaintiff on behalf of the Class.

73. A judiciable dispute between Plaintiff and the proposed Class and the Defendant is before this Court under 28 U.S.C. § 2201, *et seq.*, concerning the construction of the auto insurance policies issued by Defendant and the rights arising under those policies.

74. Plaintiff, for himself and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive for Progressive to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous Projected Sold Adjustments.

75. Progressive's unlawful common policy and general business practice of applying Projected Sold Adjustments is ongoing. Accordingly, Progressive has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class requiring it to settle total loss claims on the basis of the total loss vehicle's ACV.

76. As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured. Plaintiff's and proposed Class members' damages include the amounts illegally deducted by Progressive from the insureds' payments.

77.     Plaintiff seeks a declaration that Progressive's application of unfounded Projected Sold Adjustments results in a valuation of less than the ACV Progressive is required under its insurance contracts to pay insureds.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a)     determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, certify the proposed Class for class treatment, appoint Plaintiff as class representative for the Class, and appoint undersigned counsel as Class Counsel;

b)     enter an order finding that Defendant's actions described herein constitute breaches of the express terms of its policies of insurance;

c)     award Plaintiff and members of the Class actual damages according to proof;

d)     enter a declaratory judgment that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Defendant for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

e)     enter further belief based on the declaratory judgment including an order enjoining Defendant from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Projected Sold Adjustments;

f)     award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g) award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law; and

h) grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.

Dated: August 24, 2022        Respectfully submitted,

*s/Whitney Stark*
**ALBIES & STARK**
Whitney Stark, OSB No. 090350

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Mariam Grigorian, Esq.*
Florida Bar No. 101050
mgrigorian@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.*
Florida Bar No. 0100537
Christopher Gold, Esq.*
Florida Bar No. 088733
scott@edelsberglaw.com
chris@edelsberglaw.com

*\* pro hac vice forthcoming*

***Counsel for Plaintiff and the Proposed Class***