IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID TAXER and SAUL CORTES, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

PROGRESSIVE UNIVERSAL INSURANCE COMPANY and ARTISAN AND TRUCKERS CASUALTY COMPANY,

Defendants.

No. 3:22-cv-01255-HZ

OPINION & ORDER

Andrew Shamis
Mariam Grigorian
Shamis & Gentile, P.A.
14 N.E. 1st Avenue, Suite 705
Miami, FL 33132

Scott A. Edelsberg
Christopher C. Gold
Edelsberg Law P.A.
20900 NE 30th Ave, Suite 417
Aventura, FL 33180

1 – OPINION & ORDER

Whitney B. Stark
Albies, Stark & Guerriero
1 SW Columbia St., Suite 1850
Portland, OR 97204

  Attorneys for Plaintiffs

Timothy W. Snider
Christopher C. Rifer
760 SW Ninth Ave, Suite 3000
Portland, OR 97205

Jeffrey S. Cashdan
Zachary A. McEntyre
J. Matthew Brigman
Allison H. White
King & Spalding LLP
1180 Peachtree St. N.E., Suite 1600
Atlanta, GA 30309

Julia C. Barrett
King & Spalding LLP
500 W. 2nd St., Suite 1800
Austin, TX 78701

  Attorneys for Defendant

HERNÁNDEZ, District Judge:

  Plaintiffs David Taxer and Saul Cortes bring class action claims against Defendants Progressive Universal Insurance Company ("Progressive") and Artisan and Truckers Casualty Company ("Artisan") for breach of contract, breach of the implied covenant of good faith and fair dealing, and for declaratory judgment. Defendants move to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court denies Defendants' motion.

## BACKGROUND

In May 2020 and May 2021, Plaintiffs Taxer and Cortes were each involved in automobile accidents that damaged their vehicles. Am. Compl. ¶¶ 18, 19, ECF 9. Plaintiff Taxer's vehicle was insured under a policy issued by Defendant Progressive, and Plaintiff Cortes's vehicle was insured under a policy issued by Defendant Artisan.[1] *Id.* Both Plaintiffs made insurance claims to their respective insurers, who declared the damage to each vehicle to be a "total loss" under the insurance policies. *Id.* ¶ 21.

Plaintiffs' insurance policies require the Defendant insurance companies to "pay for sudden, direct and accidental loss" to Plaintiffs' vehicles. Am. Compl. Ex. A at 20, ECF 9-1. In relevant part, the policies provide that the amount of reimbursement for total loss to a covered vehicle is "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." *Id.* at 24. The policies also state that "the actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at 25.

To calculate the actual cash value ("ACV") and settlement amounts on Plaintiffs' claims, Defendants used a third-party vendor, Mitchell International, Inc. ("Mitchell"), who prepared a "Vehicle Valuation Report" for each vehicle. Am. Compl. ¶ 22; Am. Compl. Ex. B, C. The Mitchell Vehicle Valuation Reports use the sales price for recently sold comparable vehicles and the listed price for comparable vehicles presently for sale in a claimant's geographic area to determine the market value for a claimant's total loss vehicle. *Id.* For comparable vehicles listed but yet sold, the Valuation Reports for Plaintiffs' vehicles applied a "Projected Sold Adjustment"

---

[1] Both Progressive Universal Insurance Company and Artisan and Truckers Casualty Company are subsidiaries of "Progressive Group entities." Am. Compl. ¶¶ 13, 14.

3 – OPINION & ORDER

("PSA") to obtain an adjusted price. Am. Compl. ¶ 24; Am. Ex. B, C. The PSA is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Am. Compl. Ex. B, C. The Valuation Reports averaged the adjusted price for comparable vehicles to determine the actual cash values of Plaintiffs' total-loss vehicles. *Id.*

For Plaintiff Taxer, Defendant Progressive's application of a Projected Sold Adjustment reduced the comparable price for two of five comparable vehicles in the report by $1,279 and $1,264, respectively. Am. Compl. ¶ 24. For Plaintiff Cortes, Defendant Artisan applied Projected Sold Adjustments to twelve of thirteen comparable vehicles, which reduced prices by amounts ranging from $560 to $800. *Id.* Plaintiffs claim that Defendants' use of Projected Sold Adjustments does not reflect market realities and improperly reduces the amount of the calculated actual cash value of total loss vehicles. *Id.* ¶¶ 26, 30. Plaintiff Taxer alleges that Defendant Progressive breached its contract with him "through the use of improper and unfounded Projected Sold Adjustments in Mitchell vehicle valuation reports," resulting in damages of at least $508.60. *Id.* ¶¶ 66, 67. Plaintiff Cortes brings the same claim against Defendant Artisan and alleged damages of at least $643.15. *Id.* ¶¶ 73, 74. Plaintiffs also bring claims for breach of the implied covenant of good faith and fair dealing against both Defendants.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Defendants move to dismiss all claims. In their response brief, Plaintiffs agree to voluntarily dismiss their claims for declaratory judgment. Thus, the claims at issue are those for breach of contract and for breach of the implied covenant of good faith and fair dealing against both Defendants.

**I.      Breach of Contract**

To state a claim for breach of contract under Oregon law, a plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damages to plaintiff." *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *4 (D. Or. Nov. 21, 2011) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570-71, 927 P.2d 1098, 1101 (1996)). In

moving to dismiss Plaintiffs' breach of contract claims, Defendants' sole argument is that Plaintiffs do not adequately plead the damages element. Defendants contend that Plaintiffs' breach of contract claims fail because they do not allege the actual amount that Defendants should have paid on their insurance claims. Defendants assert that because damages are an essential element of breach of contract, Plaintiffs must allege facts establishing that Defendants paid them less than the actual cash value of their vehicles. *See Sharawe v. Indian Harbor Ins. Co.*, No. 2:21-cv-01466-JHC, 2022 WL 2755930, at *4 (W.D. Wash. July 14, 2022) (citing *Lara v. First Nat. Ins. Co. of Am.*, 25 F. 4th 1134, 1139 (9th Cir. 2022) ("[T]o sustain his claim [for breach of contract] under *Lara*, Plaintiff must allege that he was paid less than the true ACV of his vehicle.").

In *Lara*, the Ninth Circuit affirmed the district court's denial of class certification on claims that an insurance company failed to follow statutory procedural requirements in determining the actual cash value of the insureds' vehicles. The court noted that if a putative class member was given the actual cash value of their vehicle or more, "then he or she cannot win on the merits." 25 F.4th at 1139. The court held that common questions did not predominate because "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person . . . it would involve looking into the pre-accident value of the car and then comparing that with what each person was offered, to see if the offer was less than the actual value." *Id.*

Despite Defendants' contention, *Lara* does not support dismissing Plaintiffs' claims. To state a claim for breach of contract, Plaintiffs must allege that they received less from Defendants than the actual cash value of their vehicles. *See Sharawe*, 2022 WL 2755930, at *4. Plaintiffs do exactly that. Not only do Plaintiffs allege that they were paid less than the true

6 – OPINION & ORDER

actual cash values of their vehicles, they state the exact additional amount that each would have received had Defendants not applied Projected Sold Adjustments in determining the market value of comparable vehicles. Plaintiff Taxer claims the actual cash value of his vehicle would have been $508.60 greater if not for Defendants' use of Projected Sold Adjustments. Plaintiff Cortes claims the actual cash value of his vehicle would be $643.15 greater. Thus, because Plaintiffs allege the actual amount of damages they suffered from Defendants' breach, they state a claim for breach of contract.

In denying motions to dismiss virtually identical claims against insurance companies, several district courts have rejected arguments similar to Defendants' here. *See, e.g.*, *Holmes v. Progressive Univ. Ins. Co.*, No. 22 C 894, 2023 WL 130477, at *7 (N. D. Ill. Jan. 9, 2023) ("As to damages, contrary to Progressive's assertions, Plaintiffs need not allege the ACV of their total loss-vehicles[.]"); *Watson v. Progressive Direct Ins. Co.*, No. CV 5:22-203-DCR, 2022 WL 18027628, at *7-8 (E.D. Ky. Dec. 30, 2022) (rejecting Progressive's argument that the plaintiff had asserted only vague allegations of underpayment by not claiming what she believed the ACV of her vehicle ought to be when the plaintiff "stat[ed] that she suffered $904.33 in damages: the amount by which Progressive reduced her settlement offer after applying the PSA"); *Volino v. Progressive Cas. Ins. Co.*, No 21 CIV. 6243 (LGS), 2022 WL 5242894, at *5 (S.D.N.Y. Oct. 6, 2022) (holding that the plaintiff's Complaint adequately alleged damages by claiming the defendants had "calculated the PSA to systematically undervalue and, in turn, underpay Plaintiff's total loss claims and paid each Plaintiff less than the actual cash value of claimant's loss vehicles"). In denying the defendants' motion to dismiss similar breach of contract claims, one court noted:

> As for the damages element . . . it seems sufficient at the motion to dismiss stage for Plaintiffs to allege, as they do, that the ACV for their vehicles was greater than

7 – OPINION & ORDER

the amounts Defendants paid. Indeed, Plaintiffs specifically allege that their vehicles were subject to downward adjustments from comparable vehicles' prices of 9-10% in Petri's case and 3-7% for Green. Obviously, the damages Plaintiffs seek are these differences—numbers which will become more precise through the discovery process.

*Petri v. Drive N.J. Ins. Co.*, NO. 1:21-cv-20510, 2022 WL 4483437, at *5 (D.N.J. Sept. 26, 2022). Plaintiffs here do even more—they allege the exact dollar amounts by which the actual cash values of their vehicles were reduced and seek those amounts as damages. Because Plaintiffs adequately allege damages, the Court denies Defendants' motion to dismiss Plaintiffs' breach of contract claims.

## II.     Breach of the Covenant of Good Faith and Fair Dealing

Oregon law "imposes a duty of good faith and fair dealing in the performance and enforcement of every contract." *Foraker v. USAA Cas. Ins. Co.*, 345 F. Supp. 3d 1308, 1309-10 (D. Or. 2018) (quoting *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615, 892 P.2d 683, 693 (1995)). Under Oregon law, parties to a contract have a good faith obligation "to perform the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Veloz v. Foremost Ins. Co. Grand Rapids, Mich.*, 306 F. Supp. 3d 1271, 1280 (D. Or. 2018) (quoting *Pollock v. D.R. Horton, Inc.—Portland*, 190 Or. App. 1, 77 P.3d 1120, 1127 (2003)). The duty of good faith and fair dealing serves "to prohibit improper behavior in the performance and enforcement of contracts[.]" *Foraker,* 345 F. Supp. 3d at 1310.

Plaintiffs claim that Defendants breached their covenants of good faith and fair dealing by:

   a. Intentionally inventing and applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
   b. Failing to conduct any investigation or study or research into whether the Projected Sold Adjustment (i) reflects the used auto market, (ii) is based on

    accurate data or extrapolations, (iii) is consistent with accepted appraisal methods and practices, or (iv) has any justification whatsoever;
  c. Failing to pay insureds the ACV of their total-loss vehicles;
  d. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;
  e. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

Am. Compl. ¶¶ 81, 89. Defendants argue that these claims fail because they are duplicative of Plaintiffs' breach of contract claims.

  Although related, claims for breach of an implied covenant of good faith are distinct from breach of contract claims. *Foraker*, 345 F. Supp. 3d at 1310; *see Veloz v. Foremost Ins. Co. Grand Rapids, Mich.*, 306 F. Supp. 3d 1271, 1280 (D. Or. 2018) ("[S]uccess on a breach of good faith claim does not require breach of the express or implied terms of the contract."). Thus, "a claim for breach of the duty of good faith and fair dealing may be pursued independently of a claim for breach of the express terms of a contract." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 435, 240 P.3d 94 (2010). Even when premised on the same facts, a plaintiff may pursue both a breach of contract claim and a breach of the implied covenant of good faith claim. *Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192-HZ, 2021 WL 3713042, at *8 (D. Or. Aug. 19, 2021); *see Gunderson LLC v. BCG Properties Grp., Inc.*, No. 3:19-cv-01569-AC, 2020 WL 1529356, at *10 (D. Or. Mar. 30, 2020) ("[The plaintiff's] claim for breach of the duty of good faith and fair dealing will not fail even if based on the same facts alleged to constitute a breach of the express contract.").

  Although Plaintiffs' breach of the implied covenant of good faith claims are based on the same facts as their breach of contract claims, the claims are not duplicative. The crux of Plaintiffs' breach of good faith claims is that Defendants exercised their discretion in calculating the actual cash value of each of their total-loss vehicles in an unreasonable manner and with an

9 – OPINION & ORDER

improper motive. Plaintiffs may succeed on these claims even if they do not succeed on their breach of contract claims. Plaintiffs' breach of good faith claims require proof of elements distinct from their breach of contract claims and do not require proof that Defendants breached the contract. *See Gunderson*, 2020 WL 1529356, at *10 (holding that the plaintiff's claim for breach of the implied covenant of good faith and fair dealing was "not redundant or duplicative" because it required proof of elements different from its breach of contract claim). For example, Plaintiffs could prove Defendants acted in bad faith by using Projected Sold Adjustments without breaching any express terms of the contracts. Thus, Plaintiffs' claims, as pleaded, are not entirely duplicative of their breach of contract claims.

Defendants next argue that Plaintiffs' claims fail because the implied duty of good faith and fair dealing "cannot provide a remedy for an . . . act that is expressly permitted by contract." *Zygar v Johnson*, 169 Or. App. 638, 645, 10 P.3d 326, 330 (2000). In other words, "conduct consistent with the terms of the contract cannot serve as the basis of a claim of violation of the duty of good faith." *Bracken v. USAA Gen. Indem. Co.*, No. 3:19-CV-00825-YY, 2019 WL 6037661, at *5 (D. Or. Nov. 14, 2019) (citation and brackets omitted). Defendants assert that they were expressly permitted under the contract to use a third-party valuation service like Mitchell and that "the PSA is part and parcel of the Mitchell software." Def. Mot. to Dismiss 12-13, ECF 26. Defendants rely on language in the insurance contracts that authorizes them to "use estimating, appraisal, or injury evaluating systems . . . developed by . . . a third party and may include computer software, databases, and specialized technology." Am. Compl. Ex. A at 31.

But Defendants misconstrue Plaintiffs' claims. Plaintiffs do not allege that Defendants breached the covenant of good faith and fair dealing by generally using third-party software to determine the actual cash values of their vehicles. Rather, Plaintiffs claim that Defendants'

10 – OPINION & ORDER

particular application of Projected Sold Adjustments to lower the calculated actual cash values violated their duty of good faith and fair dealing. The insurance contracts at issue do not explicitly discuss using Projected Sold Adjustments, or for that matter, using any particular method of valuation. At the motion to dismiss stage, the Court cannot determine whether the insurance contracts implicitly authorize the use of Projected Sold Adjustments to determine actual cash values.

As Plaintiffs allege, Defendants have an implied duty to use reasonable methods to determine the actual cash value of their total-loss vehicles. That duty is distinct from Defendants' obligation to perform under the express terms of the contracts. Plaintiffs adequately allege that Defendants did not comply with that duty. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claims for breach of the implied duty of good faith and fair dealing.

## CONCLUSION

Defendants' Motion to Dismiss [26] is DENIED.

IT IS SO ORDERED.

DATED: ____March 31, 2023_____.

_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER